RONDO SMITH-BEY,

       Petitioner,

v.

KENNETH McKEE,

       Respondent.

CASE NO. 2:10-14669
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

       Rondo Smith-Bey, ("petitioner"), presently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for assault with intent to commit murder, M.CL.A. 750.83; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

       Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court.

       Petitioner shot Aaron Kelley, Jr. several times on February 3, 2006, in Southfield, Michigan. Kelley had testified against petitioner during the preliminary examination in an armed robbery case two days prior to the shooting.

Aaron Kelley, Jr. was a self-employed residential builder. Kelley first met petitioner in 2003, when petitioner's father was working as a subcontractor for Kelley. Kelley had a continuous business relationship with petitioner's father. (Tr.8/10/2006, pp. 25, 49-51). In December 2005, petitioner approached Kelley about doing some repairs on his house. Kelley agreed to do the repairs and advised petitioner that in appreciation of the business, he would try to give him up to a thousand dollars of the money that they would receive from the insurance company for the repairs. (*Id.,* pp. 51-55). Petitioner and his wife requested a number of upgrades, which caused the project to go $3,600.00 over budget. Kelley discussed the upgrades with petitioner's father, who worked as the subcontractor on the project and left it to him to explain the situation to petitioner. The project was finished around the end of August, 2005. (*Id.,* pp. 58-64).

On December 20, 2005, petitioner and another person came to Kelley's office. Petitioner brandished a rectangular metallic bar at Kelley, who was sitting at his desk, and said "I want my money. You [] bitch. I want my money." Kelley informed petitioner that he did not have $1,000.00, at which time petitioner's associate showed Kelley a gun. Kelley asked the man if he was going to shoot him, before asking his niece to write a check for $1,000.00, which she handed to petitioner. After receiving the check, petitioner and his associate left. Kelley's niece then called the Southfield Police Department to report the incident. (*Id.,* pp. 64-70).

On February 1, 2006, Kelley testified against petitioner in the Southfield District Court regarding the robbery on December 20, 2005. While Kelley was waiting in a hallway, petitioner sat down next to him and told Kelley he wanted to talk. Kelley replied that they had nothing to discuss and advised petitioner that he was breaching the conditions of his bond. As a result of

2

petitioner's contact with Kelley, the district court judge reprimanded petitioner and reminded him of the conditions of his bond. Kelley went on to testify in the district court concerning petitioner coming to his office and obtaining the $1,000.00. (*Id.,* pp. 70-75).

On February 3, 2006, Kelley was working in his office. At approximately noon, Kelley left the office. Kelley got into his car in the parking lot and began backing out. Kelley looked out the side view mirror and saw petitioner running toward his car with his arm extended. Petitioner was approximately ten feet away from Kelley. As Kelley began driving forward, he heard a gunshot and felt pain in his back. Kelley was shot again in the back. Kelley's legs went numb, his foot hit the gas pedal, and his car went out of control, crashing into some shrubbery by his office building. (*Id.,* pp. 26-30).

Kelley indicated that petitioner was wearing a red scarf or bandana below his nose. Kelley, however, was able to see petitioner's eyes, nose, and skin complexion. When the police arrived, Kelley informed them several times that petitioner was the man who shot him. Kelley testified that he had seen petitioner on a number of occasions and was absolutely sure that he was the shooter. Kelley subsequently told a detective at the hospital that petitioner was his assailant. (*Id.,* pp. 31-33, 46-47). Kelley was shot twice in the back and once in the shoulder. One bullet just missed his heart and another bullet missed his spine. As a result of the gunshot wounds, Kelley remained in the hospital for five weeks and at the time of trial he was only able to walk with the assistance of leg braces and a walker. (*Id.,* pp. 48-49).

Officer Devlin Williams of the Southfield Police Department responded to the shooting. Upon arriving at the scene, Officer Williams noticed a black Cadillac crashed into the building. Kelley was behind the wheel of the Cadillac and had gunshot wounds in his side and his chest.

Officer Williams testified that despite the injuries, Kelley was alert and responsive. Officer Williams asked Kelley who shot him and he replied that it was Rondo Smith-Bey. (*Id.,* pp. 118-26).

Glenn Heaney testified that he was employed as a specialist in the crime laboratory for the Southfield Police Department. Heaney was sent to the scene of the shooting, where he observed the victim's Cadillac crashed into the front of the building. Heaney discovered eight spent 9 millimeter round casings in the driveway area of the building. The presence of these casings indicated that a semi-automatic weapon was used in the shooting. The location of the casings indicated the general area where the shooter had been. (*Id.,* pp. 135-47).

Heaney examined the victim's Cadillac at the crime scene and later in the garage at the Southfield Police Department. Heaney discovered bullet holes in the passenger side door and in the rear of the vehicle. Heaney determined that the driver's side front and rear windows and the passenger's side front and rear windows had been shot out. Heaney recovered five bullets from the Cadillac. (*Id.,* pp. 150-159).

A day or two after the shooting, Heaney searched petitioner's tan Ford Explorer. (Tr. 8/10/2006, p. 160; Tr. 8/11/2006, p. 22). Heaney recovered a pair of binoculars, ear protection, and two masks in the storage area behind the rear seat of the Explorer. (Tr. 8/10/2006, pp. 160-62). Heaney was given a pair of shoes worn by petitioner and examined them, but did not find any glass fragments in them. (Tr. 8/11/2006, pp. 10-12). Heaney did find some glass fragments on the floor of the driver's side of petitioner's Ford Explorer. (*Id.,* pp. 14-15).

Detective Chris Helgert of the Southfield Police Department testified that on February 3, 2006, he was dispatched to the victim's office building in regards to the shooting. Detective

4

Helgert spoke with Kelley, who was laying on a stretcher. Kelley informed Detective Helgert

that petitioner had shot him. Det. Helgert also had petitioner's Ford Explorer towed from a street

in Detroit to the Southfield Police Department. Later that day, Detective Helgert spoke with

petitioner, who agreed to waive his constitutional rights and speak with Helgert. Petitioner told

Detective Helgert that he had previously worked at Guardian Armored Car Company. (Tr.

8/11/2006, pp. 41-51).

John Mills testified that he was the president of a credit union on Ten Mile Road in

Southfield, Michigan. On February 3, 2006, Mills was sitting at his desk when he heard a couple

of gunshots. Mills looked out his window and saw a black male in a Mackinaw style jacket

carrying a gun in his left hand. The jacket resembled the kind that security guards wear. Mills

could see the man's profile, but could not get a direct view of his face. (*Id.,* pp. 62-63, 66-68, 73,

88).

Mary Mills testified that on February 3, 2006, she was with her husband John Mills at his

credit union. Ms. Mills heard about three gunshots and looked out the window. Ms. Mills

observed a black male running towards the back of the office building across the street, but she

could only see the man from the back. Ms. Mills told the police that she thought the man who

was running might be a security guard because of the uniform that he was wearing. Ms. Mills

testified that she thought that the man had a darker complexion than petitioner. (*Id.,* pp. 94-101,

103, 107-09).

Petitioner testified that he had worked at one time for Guardian Armor and had received

two uniform jackets by the company, but claimed that he returned the jackets to Guardian when

he stopped working for them almost a year before February of 2006. Petitioner denied shooting

Kelley, although he acknowledged that the victim owed him $1,000.00. Petitioner indicated that he went to Kelley's office to ask for the money in December 2005, but claimed that he did not raise his voice or refer to Kelley as a bitch. Petitioner testified that when he was arraigned on the original armed robbery charge, no one warned him that he could not contact Kelley. (*Id.*, pp. 184-89, 194).

Petitioner testified that after being arrested, the police never asked him where he was at the time of shooting, nor was he given an opportunity to inform the police of his whereabouts at the time of the crime. Petitioner admitted that he had ear protection in his vehicle, but claimed that he only went to the gun range once since his discharge from the military. Petitioner claimed that the masks that had been recovered from his car were meant to be used for the next Halloween and that the binoculars that had been in his vehicle he had received when he opened a bank account. While petitioner was in the army, he received a certificate as a marksman. Petitioner admitted that he owned two guns. Petitioner had previously reported a 9 millimeter semi-automatic gun to the police as having been lost. (*Id.*, pp. 200-01, 208-10, 212, 237).

Detective Helgert was recalled by the prosecutor as a rebuttal witness. Helgert testified that petitioner was read his Miranda rights after being arrested. Petitioner waived his rights and agreed to talk to the detectives, but refused to sign a written waiver of his rights. When petitioner was asked why he would not sign the written waiver, petitioner replied that on a prior occasion he had "got fucked" when he signed the form. Detective Helgert asked petitioner where he was at the time of the shooting, but petitioner turned away and did not answer the question. (*Id.*, pp. 257-62).

Petitioner's conviction was affirmed on appeal. *People v. Smith-Bey*, No. 274243 (Mich.

Ct. App. April 10, 2008); *lv. den.* 482 Mich. 1029, 769 N.W.2d 208 (2008).

Petitioner then returned to the trial court and filed a post-conviction motion for relief

from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which the trial court denied. *People v. Smith-*

*Bey,* No. 2006-207430-FC (Oakland County Circuit Court, July 22, 2009). The Michigan

appellate courts denied petitioner leave to appeal. *People v. Smith-Bey,* No. 294052

(Mich.Ct.App. January 6, 2010); *lv. den.* 487 Mich. 852, 784 N.W.2d 206 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred when it improperly admitted prior acts evidence in violation of MRE 404(b) and MRE 403, thereby denying Petitioner a fair trial.

II. The trial court erred when it improperly instructed the jury that the issue of prior acts had already been reviewed by the court and was held to be admissible, thereby denying Petitioner a fair trial.

III. The prosecutor committed misconduct when he elicited testimony revealing that Petitioner chose to make no statement when he was questioned about his whereabouts during the shooting.

IV. The trial court erred when it improperly scored Offense Variables 3, 6, and 19, which resulted in a higher sentencing guidelines range.

V. Petitioner was denied the effective assistance of appellate counsel when his counsel failed to raise more meritorious issues during his direct appeal.

VI. There was insufficient evidence to support Petitioner's convictions. Further, Petitioner is actually innocent of the crimes charged.

VII. Petitioner was denied his right to due process and a fair trial where his arrest was based on an unconstitutional felony complaint. Further, his trial counsel was ineffective for failing to investigate and challenge the warrant.

VIII. Petitioner was denied his right to due process and a fair trial where the trial court's instructions improperly coerced a verdict from a deadlocked jury. Further, his trial counsel was ineffective for failing to request a mistrial.

IX. The trial court erred when it failed to instruct the jury regarding the

7

prosecutor's duty to prove venue beyond a reasonable doubt. Further, his trial counsel was ineffective for failing to object and also for failing to request the instruction.

X. Petitioner's Fourth Amendment right protecting him against an illegal search and seizure was violated.

XI. Petitioner was denied his right to due process and a fair trial when statements were elicited in violation of his Fifth Amendment right to remain silent.

XII. Petitioner was denied the effective assistance of trial counsel because his counsel failed to call an expert witness on identification and he failed to prepare and impeach a key witness.

XIII. Petitioner was denied his right to due process and a fair trial as a result of a conflict of interest between himself and his trial counsel.

XIV. Petitioner is entitled to relief due to the cumulative effect of the errors.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

9

## III. DISCUSSION

### A. Claims # 2, 3, and 5-14. The procedurally defaulted claims.

The Court will discuss petitioner's procedurally defaulted claims first for judicial economy and clarity. Respondent claims that petitioner's second and third and fifth through fourteenth claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that petitioner's second and third claims are procedurally defaulted because petitioner failed to preserve the issues by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claims for plain error only. *Smith-Bey*, No. 274243, Slip. Op. at *2-3.

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at

10

trial, petitioner had not preserved his claim involving the judge's preliminary instruction about the admissibility of the prior bad acts or his claim that the prosecutor introduced evidence that petitioner had exercised his right to remain silent. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's second and third claims does not constitute a waiver of the state procedural default. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claims for plain error as enforcement of the procedural default. *Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's second and third claims does not mean that these claims were not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Petitioner's second and third claims are procedurally defaulted.

In the present case, petitioner has offered no reasons for his failure to preserve these two claims. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Although petitioner raised several ineffective assistance of counsel claims in his post-conviction motion, he never raised a claim that trial counsel was ineffective for failing to object to the judge's preliminary instruction concerning the admission of the prior bad acts testimony or the use of petitioner's silence against him at trial. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the erroneous preliminary instruction or the use of petitioner's silence in rebuttal, any alleged

11

ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his second and third claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his second and third claims. *Smith,* 477 U.S. at 533.

Respondent contends that petitioner's fifth through fourteenth claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Mich.Ct. R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed,* 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Oakland County Circuit Court judge, in denying petitioner's post-conviction motion, after reciting the "cause and prejudice" standard under M.C.R. 6.508(D)(3), ruled that petitioner had failed to satisfy the "good cause" requirement under M.C.R. 6.508(D)(3) for not raising these claims on his direct appeal. *Smith-Bey,* No. 2006-207430-FC, Slip. Op. at * 4-7. The judge further concluded that petitioner had failed to demonstrate "actual prejudice", as required by M.C.R. 6.508(D)(3). *Id.,* at 8-20.

Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this

analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys,* 929 F. 2d at 267. Petitioner's sixth through fourteenth claims are procedurally defaulted. [1]

With respect to his post-conviction claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

---

[1] Petitioner could not have procedurally defaulted his fifth claim which alleges the ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington,* 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray,* 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a twenty four page appellate brief which raised the first four claims that petitioner has presented in his petition. [See Dkt. # 9-11]. Petitioner has not shown that appellate counsel's strategy in presenting these four claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Oakland County Circuit Court in rejecting petitioner's post-conviction claims and by the Assistant Michigan Attorney General in her answer to the

15

petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010); *cert. den.* 131 S. Ct. 1013 (2011)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In the present case, petitioner has failed to show cause to excuse his default of the claims that he raised for the first time on state post-conviction review. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his second and third or his sixth through fourteenth claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim [Claim # VI] is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's second and third claims on direct appeal, by the Oakland County Circuit Court judge in rejecting petitioner's fifth through fourteenth claims when he denied petitioner's post-conviction motion, and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that his procedurally defaulted claims have any merit. In particular, the reasons justifying the denial of petitioner's procedurally defaulted claims were "ably articulated by the" Michigan Court of Appeals in rejecting petitioner's second and third claims on direct review and by the Oakland County Circuit Court in rejecting petitioner's fifth through fourteenth claims on post-conviction review, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,* 328 Fed. Appx. 323, 324 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### B. Claim # 1. The prior bad acts evidence claim.

In his first claim, petitioner contends that the trial court erred in admitting into evidence his prior assault against the victim as well as his attempt to speak with the victim at the Southfield District Court before the preliminary examination in the prior assault case.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting evidence of

his prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *See also Estelle v. McGuire,* 502 U.S. 62, 72 (1991)(Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.,* 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of petitioner's first claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Moreover, in rejecting petitioner's claim, the Michigan Court of Appeals concluded that evidence of the prior assault and the courthouse contact were admissible independent of M.R.E. 404(b) as part of the *res gestae* of the charged offense. *Smith-Bey,* Slip. Op. at * 2.

Background evidence, often referred to as *res gestae*, does not implicate the provisions of 404(b). *United States v. Hardy,* 228 F. 3d 745, 748 (6th Cir. 2000). Background evidence consists of other acts which are "inextricably intertwined" with the charged offenses or those

acts, "the telling of which is necessary to complete the story of the charged offense." *Id.* The

Sixth Circuit explained that:

> "Proper background evidence has a causal, temporal or spatial connection with
> the charged offense. Typically, such evidence is a prelude to the charged offense,
> is directly probative of the charged offense, arises from the same events as the
> charged offense, forms an integral part of a witness's testimony, or completes the
> story of the charged offense."

*United States v. Hardy,* 228 F. 3d at 748.

Petitioner's prior assault upon the victim and his prior contact with the victim at the

preliminary examination in that case were arguably part of the assault with intent to murder

charge, because these incidents were preludes to the charged offense, were directly probative to

the charged offense, particularly on the issues of motive and identity, and were an integral part

of the witness' testimony. Because the Michigan Court of Appeals' rejection of petitioner's

claim was reasonable, petitioner is not entitled to habeas relief.

## C. Claim # 4. The sentencing guidelines claim.

Petitioner lastly contends that several of the offense variables of the sentencing

guidelines on his offense of assault with intent to commit murder were incorrectly scored. [2]

Petitioner's sentence of eighteen years, nine months to fifty years years was within the

statutory limits for the offense of assault with intent to commit murder. A sentence imposed

within the statutory limits is not generally subject to habeas review. *Townsend v. Burke,* 334

U.S. 736, 741 (1948); *Robinson v.Stegall,* 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). A

sentence within the statutory maximum set by statute does not normally constitute cruel and

---

[2] The sentence for felony-firearm in Michigan is a mandatory two year prison sentence that must be served consecutively to any underlying felony.*See* M.C.L.A. 750.227b. Hence, the crime of felony-firearm is not covered by the Michigan Sentencing Guidelines.*People v. Johnigan,* 265 Mich. App. 463, 472; 696 N.W. 2d 724 (2005).

unusual punishment either. *Austin v. Jackson*, 213 F. 3d 298, 302 (6ᵗʰ Cir. 2000); *Johnson v. Smith*, 219 F. Supp. 2d at 884.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White*, 76 Fed. Appx. 52, 53 (6ᵗʰ Cir. 2003); *Robinson v. Stegall*, 157 F. Supp. 2d at 823. "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Petitioner's claim that the sentencing guidelines were incorrectly scored fails to state a claim upon which habeas relief can be granted. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis.*

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED: 4-6-12